DONNA TARAS SMITH *vs.* TOWN OF LONGMEADOW
& others.[1]

No. 88-P-1266.

Hampden. December 7, 1989. - December 10, 1990.

Present: ARMSTRONG, BROWN, & PERRETTA, JJ.

*Civil Rights*, Availability of remedy, Coercion. *Motor Vehicle*, Sale. *License. Municipal Corporations*, Selectmen.

A license granted by a town's board of selectmen purporting to authorize the licensee to conduct a used car business on premises outside the town was a nullity and vested no property interest in the licensee; consequently, the board's rescission of the license, without a hearing, did not give rise to a Federal civil rights claim under 42 U.S.C. § 1983 (1982) [601-602], nor to a State law claim under G. L. c. 12, §§ 11H & 11I, the Massachusetts Civil Rights Act [602-603].

CIVIL ACTION commenced in the Superior Court Department on December 29, 1987.

Motions for summary judgment were heard by *Raymond R. Cross*, J.

*William J. Pudlo* for the plaintiff.

*W. Garth Janes* (*David J. Martel*, Town Counsel, with him) for the defendants.

ARMSTRONG, J. The plaintiff appeals from a judgment dismissing her action for damages against the selectmen of Longmeadow for rescinding, without hearing, a license for the sale of second-hand motor vehicles, G. L. c. 140, § 59. The action (in relevant part[2]) was predicated on an alleged

---

[1]The board of selectmen of Longmeadow.

[2]Not before us are two counts which sought damages under G. L. c. 258 and for intentional infliction of emotional distress. These were dismissed by stipulation after the allowance of the defendant's motion for summary judgment on the other counts. No final judgment has been entered, however.

violation of 42 U.S.C. § 1983 (1982) and G. L. c. 12, §§ 11H and 11I, as inserted by St. 1979, c. 801, § 1.

The chronology began with the plaintiff's application for a license. It was in letter form and stated in part:

> "I understand that a dealer's license can be issued to an individual as long as the application has the approval of the town in which that individual resides.
>
> "It is my intention to eventually have a small used car business specializing in safe used cars for women and teenagers. I wish to make it very clear that any cars I would have for sale at the present time would be sold at existing used car lots located in various locations outside of Longmeadow. There would be no sales or service conducted from my home."

The selectmen, apparently unfamiliar with used car dealers' licenses (this was the first one to be applied for in Longmeadow, according to one selectman), after hearing, granted the license on April 7, 1986. In early May the board was advised by town counsel that it did not have jurisdiction to issue a license to a Longmeadow resident who did not have sales premises in Longmeadow. The selectmen accordingly voted on May 5, 1986, to rescind its prior issuance of the license. The plaintiff was notified of this action by a letter from town counsel dated May 7, 1986. The letter advised: "[Y]ou should have your license issued through the City of Springfield or whatever city or town in which you sell your vehicles." On July 31, 1986, a judge of the Superior Court ordered the license restored to the plaintiff on the ground that its revocation without hearing, for a reason not mentioned in G. L. c. 140, § 59, violated that section.

In January, 1987, the plaintiff applied for renewal of her license. The selectmen denied the application for dual reasons: the Longmeadow licensing authority could not grant a license for sales from premises outside Longmeadow, and the plaintiff was violating the Longmeadow zoning by-law by using her residence, without the special permit required in a residential zone, for purposes of an "occupation for gain," by

having a business telephone and a sign at her residence and by storing in her yard vehicles to be sold. In April, 1987, the same Superior Court judge who had ordered restoration of the license in 1986 affirmed the board's action in refusing to renew the license.[3]

In December, 1987, the plaintiff filed the present action seeking damages under 42 U.S.C. § 1983 and under G. L. c. 12, §§ 11H and 11I, for the improper deprivation of her used car dealer's license during the three-month period from May 7, 1986, when the license was rescinded, to July 31, 1986, when the judge ordered it restored. Another judge heard this action on cross-motions for summary judgment. The plaintiff appeals from an order allowing the defendants' motion.

1. *The § 1983 claim.* An action lies under § 1983 to redress a deprivation of a constitutionally protected property interest by a person acting under color of State law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). There is no question that the selectmen, in rescinding the license, were acting under color of State law. The question, therefore, is whether the plaintiff had a constitutionally protected property interest in the used car dealer's license.

From the plaintiff's application it is apparent that her sole connection to Longmeadow was residency. The premises from which cars were to be sold lay outside Longmeadow — apparently in Springfield. As matter of State statutory law, a license issued by Longmeadow could not authorize the plaintiff to sell used cars from premises in Springfield. General Laws c. 140, § 59, as appearing in St. 1948, c. 181, § 2, specifies that a license shall not be issued unless the applicant demonstrates, among other things, "that he has available a place of business suitable for the purpose. The license shall specify all the premises to be occupied by the licensee for the purpose of carrying on the licensed business. Permits for a change of situation of the licensed premises or for additions thereto may be granted at any time by the licensing board

---

[3]The plaintiff did not appeal from this judgment.

. . . in writing, a copy of which shall be attached to the license." Therefore, a license under § 59 is issued to an applicant only with reference to particular premises from which the business will be conducted.

The municipal licensing authority authorized to issue such a license is that of the city or town where the business premises are located, not that of the city or town where the license-holder resides. A license issued by Longmeadow to conduct a used car business on premises outside Longmeadow (as the application specified) was a nullity. It could not and did not authorize the plaintiff to conduct the business she embarked upon. Such a license vested in the plaintiff no property interest under State law. See *Konstantopoulos* v. *Whately*, 384 Mass. 123, 137 (1981)(no hearing necessary to revoke invalid license, as contrasted with a valid license the terms of which have been exceeded), citing *White Fuel Corp.* v. *Street Commrs. of Boston*, 289 Mass. 337, 338 (1935)("Even though, treated as a revocation, the vote . . . was not based on proper notice, hearing or cause, the court in its discretion would not issue a writ of certiorari for the futile end of quashing the attempted revocation of a license already invalid"). Compare *Shlay* v. *Montgomery*, 802 F.2d 918, 922, 923 (7th Cir. 1986)(unauthorized contract for continued employment was not enforceable under Illinois law and was not a protected property interest); *Gunkel* v. *Emporia*, 835 F.2d 1302, 1303-1305 (1st Cir. 1987)(building permit issued for lot with inadequate frontage under zoning by-law conferred no property right); *Kauffman* v. *Puerto Rico Tel. Co.*, 841 F.2d 1169, 1173-1176 (1st Cir. 1988)(persons hired in violation of public employee personnel regulations have no property right in jobs). In all those cases action taken, under color of State law, without a hearing, gave the plaintiffs no right to relief under § 1983 because no property right was implicated.

2. *The G. L. c. 12, §§ 11H, 11I, claim.* What has been said disposes of the claim of a civil rights violation under §§ 11H and 11I; an invalid license does not confer, within the meaning of those sections, "rights secured by the

Smith *v.* Longmeadow.

[C]onstitution or laws of the United States, or . . . rights secured by the constitution or laws of the [C]ommonwealth." Moreover, § 11H protects such rights only against interference or attempted interference "by threats, intimidation or coercion." Those words have been applied according to their natural connotation, that of forcing submission by conduct calculated to frighten, harass, or humiliate. See, e.g., *Bell* v. *Mazza*, 394 Mass. 176, 183-184 (1985); *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. 771, 781-782 (1987); *Deas* v. *Dempsey*, 403 Mass. 468, 470-471 (1988); *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 718-720 (1989); *Longval* v. *Commissioner of Correction*, 404 Mass. 325, 332-334 (1989); *Mouradian* v. *General Elec. Co.*, 23 Mass. App. Ct. 538, 543 n.5 (1987). Adverse administrative action, at least when not part of a scheme of harassment, does not amount to "threats, intimidation or coercion." *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington, supra* at 781. *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. 621, 626-627 (1989).

The case is remanded for the entry of judgment for the defendants.

*So ordered.*