FRANCIS M. SILVIA & another,[1] trustees, vs. BUILDING
INSPECTOR OF WEST BRIDGEWATER & others.[2]

No. 92-P-557.

Plymouth. September 17, 1993. - October 28, 1993.

Present: PERRETTA, KASS, & PORADA, JJ.

*Abuse of Process. Malicious Prosecution. Civil Rights*, Availability of
remedy. *Subdivision Control*, Conditions.

In an action against town officials asserting a claim for malicious prosecu-
tion arising from the town's bringing an action to enjoin landowners
from maintaining a fence across a road and from interfering with a
drainage easement, where the town had probable cause to commence its
action, town officials, as matter of law, were not engaged in malicious
prosecution. [454]
In an action against town officials asserting abuse of process arising from
the town's bringing an action to enjoin landowners from maintaining a
fence across a road and from interfering with a drainage easement,
where the town's stated and actual objective, with no ulterior purpose,
was to keep the road open for traffic and to provide drainage, judgment
should have been entered for the defendants. [454-455]
At the trial of a claim against town officials for violation of civil rights
under G. L. c. 12, § 11I, arising from the town's bringing an action to
enjoin landowners from maintaining a fence across a road and from
interfering with a drainage easement, where there was no showing of
threats, intimidation or coercion, judgment should have been entered
for the defendants. [455]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 17, 1982.

The case was heard by *Cortland A. Mathers*, J.

*John P. Lee* for the defendants.

*Stephen M. A. Woodworth* (*Peter E. Heppner* with him)
for the plaintiffs.

[1]Joyce N. Silvia.
[2]Selectmen of West Bridgewater; the chief of police of West
Bridgewater; and the town counsel of West Bridgewater.

KASS, J. After a trial without jury, there was a judgment for $27,776.86 in damages, plus $31,423.62 in interest, based on a determination by a Superior Court judge that the defendants, town officials of West Bridgewater, were liable to the plaintiffs for abuse of process, malicious prosecution, and violation of the State Civil Rights Act (G. L. c. 12, § 11I). As to each of those causes of action, an essential ingredient is missing, and we reverse the judgment.

The plaintiffs own land off the easterly end of Shagbark Road in West Bridgewater (the locus).[3] Their grievance against the town officials is that those officials wrongfully brought an action to enjoin the plaintiffs from maintaining a steel chain link fence at the easterly end of Shagbark Road and from interfering with a drainage easement.

The foundations of the quarrel were laid in 1956 when a predecessor in title of the plaintiffs filed for approval with the planning board of West Bridgewater a definitive subdivision plan of land that included part of the locus. The plan, as approved, was recorded June 15, 1956. It shows five lots laid out along the northerly and southerly sides of a street that at the easterly end has a cul-de-sac. That cul-de-sac was responsive to § IV(A)(4)(b) of the then applicable regulations of the planning board, which required that "[d]ead-end streets shall be provided at the closed end with a turn-around" at least 100 feet in diameter. The subdivision was, as the judge found, "fully developed." Shagbark Road, the way shown on the plan, became a blacktopped road for the 430 feet running from its beginning at Main Street to the neck of the cul-de-sac. As for the cul-de-sac itself, it remained hard packed gravel. Those who lived on the subdivision lots used the cul-de-sac as a turnaround. Within the cul-de-sac the recorded plan discloses a concrete pipe. That pipe carried drainage from a catchbasin in Shagbark Road to a ditch in the plaintiffs' property and from there ultimately to the Town River. On November 23, 1959, the town meeting of West Bridgewater voted to accept Shagbark Road for a

---

[3]The street address of the locus is 35 East Center Street.

distance of 540 feet (the distance from the mouth of the street to the end of the cul-de-sac), more or less, as a public way.

The plaintiffs, the Silvias, acquired the locus in 1977, and in 1979 they filled the drainage ditch and built a six-foot high chain link fence across the neck of the cul-de-sac. After unsuccessful negotiations with the Silvias, the town officials brought the action against them to secure the restoration of the drainage ditch and the removal of the fence. A judge of the Superior Court referred the matter to a master to "determine the title of the subject property," a reference that unfortunately asked the wrong question because the issue was not who owned the fee to the cul-de-sac but whether any public rights to it had accrued. The master made an ultimate finding that the town had no rights to require the maintenance either of the cul-de-sac or the drainage system. From a judgment adopting the master's report, the town entered an appeal in this court, an appeal which we ultimately dismissed on March 11, 1983, because the town — for reasons not altogether clear from the record — failed to file its brief and record appendix. The litigation we have summarized is the basis for the abuse of process, malicious prosecution, and civil rights claims now before us.

Abuse of process presupposes the use of legal action[4] for an ulterior purpose, i.e., to achieve some end other than the apparent end of the litigation process which has been launched. *Quaranto* v. *Silverman,* 345 Mass. 423, 426 (1963). *Beecy* v. *Pucciarelli,* 387 Mass. 589, 595 (1982). *Powers* v. *Leno,* 24 Mass. App. Ct. 381, 383 (1987). *Bednarz* v. *Bednarz,* 27 Mass. App. Ct. 668, 673 (1989). Malicious prosecution also involves perverse use of the litigation process, but the central idea is that the party charged with malicious prosecution lacked probable cause in launching the ac-

---

[4]More precisely the word "process" in the context of abuse of process means causing papers to issue by a court "to bring a party or property within its jurisdiction." *Jones* v. *Brockton Pub. Mkts., Inc.,* 369 Mass. 387, 390 (1975). *Powers* v. *Leno,* 24 Mass. App. Ct. 381, 383 (1987).

tion complained of. *Lincoln* v. *Shea*, 361 Mass. 1, 4 (1972). *Bednarz* v. *Bednarz* 27 Mass. App. Ct. at 669.

On the basis of the subdivision plan approved in 1956 and recorded that year, the town might reasonably have thought that it, on behalf of the public, had imposed upon the owner of the locus the obligation to maintain a cul-de-sac as shown on the recorded plan and the drainage system also shown on that plan. Whether it was in the nature of an implied easement or a covenant running with the land, the owner of the premises in 1956 had subscribed to those burdens on his land. Indeed, at least as to the existence of the cul-de-sac as a vehicular turnaround, the owner was bound to accept that burden if he expected to have his subdivision plan approved. The subdivision regulations, as we have said, required such a turnaround. Generally, when a grantor conveys land which adjoins a way, the grantor and the grantor's successors in title are estopped to deny the way as described in a recorded plan which depicts the way, particularly when the way exists on the ground and is in use. See *Walter Kassuba Realty Corp.* v. *Akeson*, 359 Mass. 725, 727 (1971); *Shaw* v. *Solari*, 8 Mass. App. Ct. 151, 155 (1979); *Brennan* v. *DeCosta*, 24 Mass. App. Ct. 968 (1987). At the very least, the town on the undisputed facts conscientiously could have thought it had the right and the duty to keep the cul-de-sac open and, indeed, it is something of a mystery as to how it lost the case. Probable cause, therefore, existed for the town to bring its action and, in doing so, the town officials, as matter of law, were not engaged in malicious prosecution.

As for abuse of process, the stated and actual objective of the action was to keep the cul-de-sac open for traffic and drainage. As we have seen, that objective was consistent with rights the town officials reasonably thought the town possessed. There was no hidden agenda in the town's action, no ulterior motive, and no extortionate purpose. The trial judge seems to have thought that if the town wanted easements in the locus for the public it should take them by eminent domain, but there was no cause so to do if, as the town officials might reasonably have supposed, on the basis of the subdivi-

sion approval and recorded plan, the rights of passage and drainage already existed. The delivery of a cease and desist order by a police messenger from the town to a fencing contractor for the plaintiffs was not the issuance of a court paper to bring the contractor within a court's jurisdiction and, therefore, does not implicate abuse of process. See note 4 to this opinion, *supra.*

The third theory of the Silvias was that the town officials, by bringing their proceedings to keep the cul-de-sac open, violated their civil rights within the meaning of G. L. c. 12, § 11I. That statute requires a showing that the person charged with the offense, including a governmental agency, has used threats, intimidation, or coercion. *Smith* v. *Longmeadow*, 29 Mass. App. Ct. 599, 602-603 (1990). There must be a showing that the town officials acted so as to frighten, harass, or humiliate the Silvias. *Ibid.* The attempt by the town to vindicate rights which it reasonably thought the public possessed hardly constitutes that sort of conduct. Here the town first sought to conciliate with the Silvias and to reach an accommodation. When that failed, it made the resort to a court which we have ruled was altogether warranted. The cease and desist order to the Silvias' fence contractor may have been ill-advised as the contractor was not a party to the dispute, but the town's aim of keeping the status quo at the time was not ill-motivated and, in any event, the contractor is not in this case claiming he was frightened, harassed, or humiliated.

On the view we have taken of the case, it is not necessary to consider the other issues argued by the parties, which concern interest on the judgment.

The judgment is reversed and a new judgment is to enter for the defendants.

*So ordered.*