Coven, J.
Pretrial rulings on the parties’ motions to dismiss and for summary judgment on their respective claims and counterclaims effectively terminated this action with each party taking nothing. Both parties appealed, and the case is before us on their Dist./Mun. Cts. R. A. D. A., Rule 8A, agreed statement.
That statement indicates that in December, 2001, Zhu Li (“Li”) and Xiaozhu Zheng (“Zheng”) contracted with Leonard J. Wilcox and his company, Sunrise Modular Homes, Inc. (collectively, ‘Wilcox”) for the purchase and construction of a modular home. Wilcox entered into an agreement with Pengrove Building Systems, Inc. (“Pengrove”) for the manufacture and delivery of that modular home. On February 12, 2002, Li and Zheng delivered a check to Wilcox in the amount of $141,523.00, and Wilcox deposited that amount into a Sunrise bank account at Eastern Bank. On the same date, Pengrove delivered the modular home, and Wilcox tendered payment of the full balance he owed to Pengrove in the form of an $85,283.93 check. The following day, Wilcox transferred $120,000.00 from the Sunrise corporate account into an individual bank account of his at Eastern Bank which had been established in the name of Leonard J. Wilcox, d/b/a Sierra Modular Homes. Wilcox also stopped payment on the $85,283.93 check he had given to Pengrove.
As a result of Wilcox’s stop payment order, his check was returned to Pen-grove on February 19, 2006. One week later, on February 26, 2002, Pengrove commenced suit against both Wilcox and his companies in the superior court. Pengrove named Eastern Bank as trustee and obtained an ex parte trustee process attachment. Eastern Bank was served with a trustee summons on February 27, 2002. However, between February 13, 2002 and February 25, 2002, Wilcox had written a series of checks on both the Sunrise and Sierra accounts totaling $116,200.00. As a result of those debits to the accounts, Eastern Bank answered that on the date the trustee summons was served, it held funds in the Sunrise account of $563.09 and the Sierra account of $20,933.45, for a combined total of only $21,496.54.
*55 Between February 11, 2002 and February 27, 2002, there were no deposits to either the Sunrise or Sierra bank accounts other than the $141,523.00 given to Wilcox by Li and Zheng.[2]
On March 4, 2002, Pengrove amended its superior court complaint to include various claims against Li and Zheng, including one for a mechanics lien. Li and Zheng filed counterclaims against Pengrove and crossclaims against Wilcox.
On August 21, 2002, Pengrove, Li and Zheng executed a “SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF ALL CLAIMS” which provided, in part:
(7) Except as otherwise provided by the terms of the Agreement... the Settling Parties hereby fully and unconditionally release and forever discharge each other ... from and against any and all claims, contentions, debts, liabilities, demands, promises, agreements, costs, expenses ... damages, losses, suits, liens, actions, or causes of action of whatever kind or nature, whether in law or equity and whether now known or unknown, choate or inchoate, which the Settling Parties have, may have, or ever had from the beginning of the world to the date hereof, including, but not limited to, any Claims or counterclaims based on, arising out of, or in connection with anything whatsoever relating to the Lawsuit, any facts alleged in, arising out of, or related to the Lawsuit, and any claims or counterclaims which were, or could have been, brought by the Settling Parties in the Lawsuit.
On February 19, 2003, a superior court judge allowed a joint motion by Pengrove and Li and Zheng to dismiss all claims and counterclaims they had asserted against each other. Thus, as of that date, what remained of the superior court action was Pengrove’s complaint against Wilcox, and Hie crossclaims of Li and Zheng against Wilcox.
Pengrove and Wilcox then negotiated a settlement, which was to include payment to Pengrove of the $21,496.43 held in the Eastern Bank accounts. By letter of June 18, 2003, Li and Zheng informed Pengrove’s counsel that the $21,496.43 amount could not be used to fund a Pengrove/Wilcox settlement because Li and Zheng were claiming that money as the res of a constructive trust held for their benefit by Wilcox. Despite that assertion, Pengrove and Wilcox executed their settlement agreement on July 2, 2003. They later jointly moved for a dismissal of their respective claims against each other in the superior court action. Over the objection of Li and Zheng, the superior court allowed the joint motion for dismissal on June 14, 2004.
In February, 2005, Wilcox entered into a settlement agreement with Li and Zheng. On March 4, 2005, the superior court entered judgment in favor of Li and Zheng against Wilcox on the ground, inter alia, that Wilcox had held the funds in the Eastern Bank for Li and Zheng under a theory of constructive trust.
The Eastern Bank funds had been released to Pengrove pursuant to the terms of the Pengrove/Wilcox settlement agreement, and Pengrove rejected subsequent requests by'Li and Zheng to pay those funds to them. Li and Zheng then *56 commenced this action in the Cambridge Division of the District Court Department against Pengrove to recover for its alleged unjust enrichment, conversion, and unfair and deceptive acts in violation of G.L.c. 93A. All of the complaint counts were predicated on Li’s and Zheng’s contention that they were entitled to the $21,496.43 in Eastern Bank funds because of the superior courfs adjudication that Wilcox had held such funds under a constructive trust for their benefit.[3] Pengrove counterclaimed for abuse of process, malicious prosecution and breach of contract, and requested a declaratory judgment against each plaintiff. Pengrove’s counterclaims were based upon the terms of its settlement agreement with Li and Zheng.
Li and Zheng filed a motion to dismiss Pengrove’s abuse of process and malicious prosecution counterclaims pursuant to either the anti-SLAPP statute, G.L.c. 231, §59H, or, in the alternative, Mass. R. Civ. P., Rule 12(c). The motion judge dismissed the two counterclaims under Rule 12(c). Thereafter, the court allowed both parties’ cross-motions for summary judgment, thereby disposing of all remaining claims and counterclaims.
1. With respect to the allowance of summary judgment in favor of Pengrove on all of the claims asserted by Li and Zheng, it must noted that the interpretation of a settlement agreement, like any contract, constitutes a question of law for the court. Judge Rotenberg Edu. Ctr., Inc. v. Commissioner of the Dept. of Mental Retardation, 424 Mass. 430, 443 (1997).
Relying on that portion of their settlement agreement with Pengrove that states that the parties released all claims that they “ha[d], may have [had], or ever had from the beginning of the world to the date hereof [August 21, 2002],” Li and Zheng argue that the agreement did not pertain to, or release, any claim arising after August 21, 2002, and that the claims they advanced in this action arose subsequent to the August 21, 2002 date of the settlement agreement.
Their argument is without merit as it overlooks additional language of the settlement agreement which released any and all claims “including, but not limited to, any Claims or counterclaims based on, arising out of, or in connection with anything whatsoever relating to the Lawsuit, any facts alleged in, arising out of, or related to the Lawsuit, and any claims or counterclaims which were, or could have been, brought by the Settling Parties in the Lawsuit.” Further, by the express terms of the agreement, Li and Zheng also released any inchoate “claims, contentions ... actions, or causes of action ... based on [or] arising out of ... any facts alleged in, arising out of, or related to the Lawsuit.” The settlement agreement defined the term “Lawsuit” as the entire superior court action, not just the claims asserted by Li and Zheng against Pengrove in that action. Li and Zheng had filed a crossclaim in the superior court case against Wilcox for his conversion of the Eastern Bank funds which, as noted, they alleged he held under a constructive trust for them. Thus, Li’s and Zheng’s claims in this case are based upon the very same facts they alleged gave rise to their superior court claims against Wilcox. Although their claims against Wilcox had not been adjudicated in their favor at the time they settled with Pengrove, the claims asserted against Pengrove in this action were inchoate claims at that time which were “based on [] [or] arising out of... facts alleged in, arising out of, or related to the Lawsuit.” Thus, by the unambiguous terms of their own agreement, the claims advanced by Li and Zheng in this action were released upon their settlement of the superior court action with *57 Pengrove. Summary judgment was properly entered for Pengrove on the plaintiffs’ claims in this case.
2. Our conclusion that the parties’ superior court settlement agreement extinguished Li’s and Zheng’s claims against Pengrove is the very ruling sought by Pengrove in its request for declaratory judgments against the plaintiffs. No further analysis is required.[4] We note only that a G.L.c. 231A request for declaratory judgments was properly filed in this district court action despite the language of §1 of the statute which confers jurisdiction upon only the Supreme Judicial Court, the superior court, the land court and the probate court. Pursuant to G.L.c. 218, §19C, as amended by St. 2004, c. 252, §8, the district court now has the “same authority with regard to declaratory judgments as is provided for the superior court pursuant to chapter 231A for the purpose of the hearing and disposition... of civil actions for money damages...” commenced on or after August 31, 2004.
3. Pengrove correctly argues that the specific claim it filed against Li and Zheng in this action for breach of the parties’ settlement agreement was dependent upon some evidence of damages.[5] The only damages Pengrove identifies in its brief, however, are the attorney’s fees it incurred when “it was caused to retain counsel to defend” this action. Pengrove’s contention overlooks the established principle that “Massachusetts generally follows the ‘American Rule’ and denies recovery of attorney’s fees absent a contract or statute to the contrary.” Police Comm’r of Boston v. Gows, 429 Mass. 14, 17 (1999). Nothing in the settlement agreement suggests that the parties consented to attorney’s fees as an element of damages in the event a breach of the agreement by one of the parties could be established.
4. There is no merit in Li’s and Zheng’s claim that the motion judge erred in not dismissing Pengrove’s abuse of process and malicious prosecution counterclaims under G.L.c. 231, §59H, the anti-SLAPP statute. Their motion to dismiss the counterclaims was presented in the alternative as one pursuant to either §59H or Mass. R. Civ. P., Rule 12(c). Li and Zheng have failed to advance any authority for the proposition that a party who asks a judge to make a ruling in its favor on either one of two stated bases has any standing on appeal to challenge the judge’s discretionary election of one of those bases in entering the requested ruling.[6]
5. We find no error in the trial court’s allowance of Li’s and Zheng’s Rule 12(c) motion for judgment in their favor on Pengrove’s counterclaims for malicious prosecution and abuse of process.
A party may bring an action for malicious prosecution not only “for the abuse of criminal process,” but also for the unjustifiable prosecution of a civil action. Rosenblum v. Ginis, 297 Mass. 493, 497 (1937); Sullivan v. Birmingham, 11 Mass. App. Ct. 359, 367 n.8 (1981). The traditional standard for recovery on a malicious prosecution claim is that the plaintiff must prove “that the original action was brought maliciously and without probable cause, and has been terminated in favor of the *58 plaintiff.” Mitchell v. Stein, 2002 Mass. App. Div. 40, 42, quoting Hubbard v. Beatty & Hyde, Inc., 343 Mass. 258, 261 (1961). In Chervin v. Travelers Ins. Co., 448 Mass. 95, 110 (2006), the Supreme Judicial Court substituted the “improper purpose” elements appearing in §676 of the Restatement (Second) of Torts for the element of malice.[7]
Li and Zheng argue that Pengrove’s malicious prosecution claim was brought prematurely because this district court action has not terminated in Pengrove’s favor. Pengrove’s response is that the superior court action was terminated in its favor, and this district court action was thereafter brought maliciously and without probable cause. There was no error. First, Pengrove has not cited any case where a malicious prosecution claim has been advanced when the elements of the claim have been divided between two separate actions. The claim arises when the elements of the claim are unified and relate to a single action. Second, even if divisible, Pengrove offers no authority for its proposition that the element of a favorable termination has been satisfied by proof of a settlement agreement. Finally, Pen-grove contends that Li’s and Zheng’s claims have been brought in an attempt to “extract” from it the monies it received from Wilcox. However, as comment c of §676 of the RESTATEMENT states, bringing a “nuisance suit” for the “purpose of forcing [a party] to pay a sum of money in order to avoid the financial and other burdens that a defense against it would put upon [that party],” is not an “improper purpose” when, as here, the “proceedings are initiated for the purpose of forcing a settlement that has [] relation to the merits of the claim.”
6. Pengrove’s claim for abuse of process required proof that Li and Zheng (1) used process, (2) for an ulterior or illegitimate purpose not related to the process, and (3) suffered damage as the result. See Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 389 (1975). The claim “presupposes the use of legal action for an ulterior purpose, i.e., to achieve some end other than the apparent end of the litigation process which has been launched.” Silvia v. Building Inspector of West Bridgewater, 35 Mass. App. Ct. 451, 453 (1993). As with the malicious prosecution counterclaim, the pleadings do not indicate that Li and Zheng brought this action for any purpose other than litigating their claimed entitlement to the funds Pengrove received from Wilcox.
Judgment affirmed. The parties’ cross-appeals are dismissed.
So ordered.

 On February 11, 2002, the Sunrise account balance was $2,682.57. On February 12th, after the deposit of Li and Zheng’s $141,523.00 check, the Sunrise account balance was $142,703.57. On February 12, 2002, the Sierra account had a zero balance. After the $120,000.00 transfer from the Sunrise account, the Sierra account had a balance on February 13, 2002 of $120,000.00. No other deposits were made to either account between February 13, 2003 and the February 27, 2002 date of service of the trustee summons on Eastern Bank.

 We note that Li and Zheng were required by their settlement agreement with Pengrove to pay to Pengrove fifty (50%) percent of any monies collected from Wilcox, up to $85,283.93 plus interest. Thus, if Li and Zheng had collected the $21,496.54 held in constructive trust, they would have been required to return $10,748.27 to Pengrove.

 The proper allowance of Pengrove’s summary judgment motion on the ground that Li’s and Zheng’s claims were previously released was inconsistent with the courf s simultaneous allowance of their motion for summary judgment on Pen-grove’s claims of settlement and release. No motion to correct the inconsistency was filed. In any event, our construction of the settlement agreement and determination as to the scope of the parties’ release renders the inconsistency moot.

 Pengrove did not seek, and has not argued that it was entitled to, an award of nominal damages.

 A party has a right to take an interlocutory appeal from the denial of a special motion to dismiss pursuant to G.L.c. 231, §59H. Regardless of the court in which the motion is brought, that interlocutory appeal is to the Appeals Court. Fabre v. Walton, 436 Mass. 517, 522 (2002).

 Section 676 states: ‘To subject a person to liability for wrongful civil proceedings, the proceedings must have been initiated or continued primarily for a purpose other than that of securing the proper adjudication of the claim on which they are based.”