Lisa ANDREWS, Plaintiff,

v.

SOUTH COAST LEGAL SERVICES,
INC., et al., Defendants.

Civil Action No. 07–10188–JGD.

United States District Court,
D. Massachusetts.

Aug. 27, 2008.

James E. Breslauer, Robert J. Perkins, Neighborhood Legal Services, Inc., Lawrence, MA, Yvonne W. Rosmarin, Law Office of Yvonne W. Rosmarin, Arlington, MA, for Plaintiff.

William F. Smith, Smith Law Office, Haverhill, MA, Jonathan C. Young, Law Office of Jonathan C. Young, Braintree, MA, for Defendants.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff Lisa Andrews ("Andrews") has brought an action against the defendants, South Coast Legal Services, Inc., Kevin Dalton, Dean Devito and Gerald A. Sewell (collectively, "South Coast"), for violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") (Count I), violations of Massachusetts debt collection laws, Mass. Gen. Laws ch. 93 §§ 24, *et seq.*, and related regulations (Count II), violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2 (Count III), common law fraud (Count IV), and abuse of process (Count V). These claims arise out of the practices allegedly employed by South Coast in the course of attempting to collect a judgment debt from Andrews while acting in the capacity of a court-appointed special process server. Presently before the court is the defendants' motion to dismiss for failure to state a claim upon which relief can be granted, by which the defendants are seeking to dismiss the complaint in its entirety. For the reasons detailed herein, the Motion to Dismiss (Docket No. 25) is DENIED.

## II. STATEMENT OF FACTS

### Standard of Review of Record

██ "In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993). In doing so, the court may consider documents attached to or expressly incorporated in the Complaint, as well as "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to [the plaintiff's] claim," and "documents sufficiently referred to in the complaint" without converting the motion into one for summary judgment. *Id.* at 3–4 and cases cited. To survive a motion to dismiss, "the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir.2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966–67, 167 L.Ed.2d 929 (2007)).

Applying these standards, the relevant facts are as follows.

### Background

Andrews lives in Amesbury, Massachusetts. *Compl.* ¶ 4. Defendant South Coast is a Massachusetts company engaged in a business which has as its principal purpose the collection of debts. *Id.* ¶¶ 5–6. Defendant Dalton is the sole stockholder, director and officer of South Coast. *Id.* ¶ 27. Defendants Sewell and Devito are employees and agents of South Coast. *Id.* ¶¶ 12, 18.

On May 15, 2003, a judgment was entered against Andrews and in favor of Norfolk Financial Corp. ("Norfolk") in the Newburyport District Court in the amount of $2,019.00, which was to be paid at the rate of $85.00 per month. *Id.* ¶ 35, Ex. 1. A Writ of Execution on the judgment was issued by the court on June 13, 2003. *Id.*

¶ 36, Ex. 2. On October 13, 2005, the court allowed Norfolk's motion to have "South Coast Legal Service by its Deputy Sheriffs, Constables, or Agents, who are qualified persons over the age of 18" appointed as a special process server. *Id.* ¶ 37, Ex. 3. Several months later, on February 2, 2006, defendant Sewell served the writ of execution on Andrews at her home in Amesbury. *Id.* ¶¶ 40, 42. At the time, Sewell told Andrews that he was a "constable" and that he had papers from the court to take her car. *Id.* ¶ 41. According to Andrews, neither Sewell nor any of the other defendants are constables in Amesbury. *Id.* ¶¶ 9, 15, 21, 26.

### The Challenged Collection Efforts

In addition to serving Andrews with the writ of execution, Sewell served Andrews with two documents which were not authorized by the court. *Id.* ¶ 43. The first was an unsigned letter ("Demand Letter") to Andrews on the letterhead of "South Coast Legal Services, Inc. d/b/a **THE CONSTABLE'S NETWORK.**" *Id.* ¶ 44, Ex. 4. (emphasis in original). The Demand Letter provided that "[t]he Execution has been placed in the hands of a Constable for the purpose of seizing personal property, (your vehicle) to satisfy the judgment" and demanded payment of a total of $1,577.03, which included $913.89 for the "Balance due" on Norfolk's judgment, $625.00 for "Constable's fees," and $38.14 for "Poundage." *Id.*, Ex. 4. In addition, the Demand Letter provided that Andrews would need to perform several tasks in order to retrieve her car: first, she was instructed to contact Norfolk and pay the judgment amount, then she had to contact "The Constable's Network" (South Coast's d/b/a), and pay "your Constable's Fees and Poundage," and, finally, she was to go to the towing company and pay towing and storage charges. *Id.* This document also stated that interest in the amount of $.31

per day from "the above date" would be added. The date on the document was November 28, 2005, although it was not served until February 2, 2006. It further provided that *"TOWING AND STORAGE CHARGES MUST BE PAID IN CASH."* *Id.* (emphasis in original).

The second document ("Seizure and Payment Demand") described both defendants Devito and Sewell as a "Constable" and used the term "constable" throughout. *Id., Ex. 5.* The Seizure and Payment Demand stated in several places that Andrews' car was going to be auctioned off if she did not promptly comply with the requirements described therein. *Id.* According to the plaintiff, however, the defendants did not intend to sell Andrews' car, *see Compl.* ¶¶ 39, 73(c) and (e), and had no legal authority to sell Andrews' car because it had not been seized by a constable. *See id.* ¶¶ 9, 21, 26, 73(d). The plaintiff contends that the defendants' business practices routinely included seizing the cars of judgment debtors, then holding the cars as leverage to coerce debtors to pay both the debt and "constable fees." *Id.* ¶¶ 38–39.

After serving these notices, Sewell seized Andrews' car and had a towing company, Amesbury Towing, Inc. ("Amesbury Towing"), remove it and hold it. *Id.* ¶ 56. The next day, February 3, 2006, Andrews borrowed money from a relative and paid Norfolk directly the amount due on Norfolk's judgment, $913.89. *Id.* ¶¶ 57, 58, Ex. 6. When Andrews spoke on the telephone with Sewell later that day, he told her she had to speak with his "boss," Devito, about getting her car back. *Id.* ¶ 60. Devito telephoned Andrews that same day and told Andrews she had to pay the "constable" and "poundage" fees before her car would be released, and if she did not pay, the defendants would sell her car at auction on February 9, 2006. *Id.* ¶¶ 61–62. On February 6, 2006, Andrews called De-

vito again and told him she did not have the money to pay the constable and poundage fees. *Id.* ¶ 63. Devito then called Andrews on February 7, 2006, pressured her to take out a loan on her car to pay the outstanding fees, and told her the car would be auctioned on February 9, 2006 if South Coast did not get paid. *Id.* ¶ 64. On February 8, 2006, Andrews filed an Emergency Petition for Bankruptcy in order to prevent the defendants from selling her car. *Id.* ¶ 65. That same day, even after she notified Devito that she had filed for bankruptcy, Devito told Andrews by telephone that she still had to pay towing and storage fees in order to retrieve her car. *Id.* ¶¶ 66, 68.

Andrews borrowed $190 and paid it to Amesbury Towing for "towing" and "storage" fees in order to retrieve her car. *Id.* ¶¶ 69–70. An Amesbury Towing employee told Andrews that Devito had asked him to collect "constable fees" from her when she retrieved her car. *Id.* ¶ 69.

Additional facts will be provided below where appropriate.

### III. *ANALYSIS*

#### A. *FDCPA*

The defendants have moved to dismiss Andrews' claims under the FDCPA on the grounds that they were not seeking to collect a "debt" under the Act, and that they were not "debt collectors" under the Act. At this stage of the proceeding, these arguments must fail.

##### 1. *Collection of a "Debt"*

"The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices. . . . In the most general terms, the FDCPA prohibits a debt collector from using certain methods in its effort to collect a 'debt' from a consumer." *Bass v. Stolper, Koritzinsky, Brewster &*

*Neider, S.C.,* 111 F.3d 1322, 1324 (7th Cir.1997). The FDCPA defines the term "debt" as including "any obligation or alleged obligation of a consumer to pay money arising out of a transaction...." 15 U.S.C. § 1692a(5). As such, the Act is designed to protect consumers from "unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir.1982). *Egli v. Bass,* No. 98 C 2001, 1998 WL 560270, at *2 (N.D.Ill. Aug. 26, 1998).

▇ In the instant case, the defendants were attempting to collect the amounts due to Norfolk, an admitted consumer debt,[1] plus interest, poundage and fees. Andrews contends that the amounts beyond those due to Norfolk were either debts in and of themselves, or were at least "incidental" to the consumer transaction and, therefore, covered by the Act. *See Shula v. Lawent,* 359 F.3d 489, 492 (7th Cir.2004). If deemed "incidental" to the consumer debt, the defendants could still be liable under § 1692f(1) of the Act, since that section prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). *See also Shula,* 359 F.3d at 492–93. For their part, the defendants contend that the amounts they were seeking to recover were all authorized by statute, *i.e.,* permitted by law, and, therefore, the defendants cannot be found to have violated the Act by seeking to collect these amounts. *See Betts v. Equifax Credit Info. Servs., Inc.,* 245 F.Supp.2d 1130, 1133–34 (W.D.Wash.2003) (towing and impoundment fees authorized by statute did not constitute a debt arising from a

consensual consumer transaction, and, therefore, FDCPA does not apply); *Raffaele v. Marrama,* 164 F.Supp.2d 224, 227 (D.Mass.2001) (child support obligation imposed by statute is not a consumer "debt" under the FDCPA).

Andrews has alleged that all the amounts the defendants were seeking to recover were not authorized by law. For example, but without limitation, Andrews contends that since the defendants were not constables in Amesbury they could not recover constable fees, that their calculations of amounts due greatly exceeded amounts authorized by any statute, and that, in any event, for Andrews to have been liable for any post-judgment costs, the Small Claims Court would have had to enter a "special order" awarding such costs under Uniform Small Claims Rule 7(h). These allegations are sufficient to withstand the motion to dismiss.

It is not necessary for this court to determine whether these additional amounts constitute independent "debts" under the FDCPA. For present purposes, it is sufficient that they were clearly "incidental" to the debt due to Norfolk: "[h]ad it not been for the suit against [Andrews] to collect the debt [she] owed [Norfolk], no claim for costs would have arisen." *Shula,* 359 F.3d at 493. The allegations that there was no agreement to pay the fees and costs, and they were not authorized by statute, state a claim for violation of the Act. *See Jessamey v. Norfolk Fin. Corp.,* 2006 Mass.App. Div. 82, 2006 WL 1211029, at *3 (Mass.App.Div. Apr. 28, 2006) (claim against South Coast under FDCPA for attempting to collect unauthorized fees and costs in connection with the seizure of a vehicle pursuant to an execution in favor of Norfolk sufficient to survive a motion for summary judgment where "[t]he facts al-

---

**1.** A "debt" under the Act includes amounts reduced to judgment. *See* 15 U.S.C. § 1692a(5).

leged in the complaint suggest that [defendant], acting on behalf of South Coast and in concert with Norfolk and [its president], was not merely seeking to enforce an execution as permitted by statute, but was improperly attempting to use the seizure of the car as leverage to compel [plaintiff] to pay unlawful fees to which [defendant] was not entitled").

### 2. *Debt Collector*

■ Similarly, the defendants' argument that they are not "debt collectors" as a matter of law must fail at this juncture. Under the FDCPA, a "debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The Act exempts from this definition "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt[.]" 15 U.S.C. § 1692a(6)(D). The defendants contend that they fall within this "process server" exemption, and that, therefore, the claims against them should be dismissed. *See Worch v. Wolpoff & Abramson, L.L.P.*, 477 F.Supp.2d 1015, 1019 (E.D.Mo.2007) (FDCPA does not apply to process servers). However, the plaintiff has alleged sufficient facts to take the defendants out of this exemption, and the motion to dismiss is denied.

■ The process server exemption applies to "those individuals whose involvement in a debt collection communication was limited to serving the communication on the consumer—in effect, to being messengers[.]" *Romea v. Heiberger & Assoc.*, 163 F.3d 111, 117 (2d Cir.1998). Thus, it does not exempt "those who prepared the communication that was served on the consumer." *Id.* Moreover, "a person who goes beyond being merely a messenger in serving legal process and engages in prohibited abusive or harassing activities to force an individual to repay a debt is no longer exempt under the legal process server exception. At that point, he steps beyond the bounds of the official duties inherent in serving process and takes on a secondary role of 'debt collector' as defined within the statute." *Flamm v. Sarner & Assoc. P.C.*, No. 02–4302, 2002 WL 31618443, at *5 (E.D.Pa. Nov. 6, 2002). In the instant case, Andrews has alleged that the defendants prepared false and misleading documents, made demands for costs and fees to which they were not entitled, and engaged in other conduct that "smacks of … a harassing and coercive kind of debt collecting[.]" *Jessamey*, 2006 WL 1211029, at *4 (quoting *Koonce v. Aldo Realty Trust*, 8 Mass.App.Ct. 199, 201, 392 N.E.2d 549, 551 (1979)). These allegations are sufficient to take the defendants out of the process server exemption and to withstand the motion to dismiss.[2] For these

---

2. Based on this conclusion, this court does not need to address the defendants' claim that they were authorized to serve process pursuant to Mass. R. Civ. P. 4(c). In any event, this argument misses the point. While they may have been appointed as special process servers, that appointment did not authorize the defendants to engage in unlawful debt collection practices as the plaintiff has alleged, nor did it result in them being appointed as constables in Amesbury. *Compare Jackpot Provision Co., Inc. v. DiPaola*, 2006 Mass.App. Div. 102, 2006 WL 1478511 (Mass.App.Div. May 25, 2006) (unpub. dec.) (absent challenge to Rule 4(c) motion, Middlesex County deputy sheriff properly served execution in Suffolk County as a special process server). To be appointed as a constable in Amesbury, the defendants needed to follow the appropriate statutory appointment process. *See* Mass. Gen. Laws ch. 41, §§ 91, *et seq.* It is the plaintiff's contention that the defendants were improperly acting or representing themselves

reasons, the motion to dismiss Count I is denied.

### B. *Massachusetts Debt Collection Act*

In Count II of her Complaint, Andrews contends that the defendants violated Massachusetts debt collection laws, Mass. Gen. Laws ch. 93, §§ 24 *et seq.* and related regulations. The defendants have moved to dismiss this count on the grounds that they are neither "debt collectors" nor "creditors" to whom the statutes apply. For substantially the same reasons as discussed with respect to Count I, these arguments must fail.

The state definition of a debt collector is substantially the same as the federal one, and includes the same process server exemption. *See* Mass. Gen. Laws ch. 93, § 24(d). As detailed above, Andrews has pleaded sufficient facts to preclude the defendants from relying on the process server exemption. Therefore, as alleged, the defendants qualify as debt collectors under the Massachusetts statute.

█ In addition, the defendants contend that the state debt collection laws do not apply to them because they are not "creditors" under the law. Mass. Gen. Laws ch. 93, § 49 provides that a "creditor, or an assignee of a creditor, or a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall not collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner." A "creditor" is defined in ch. 93, § 24 as "any person who offers or extends credit creating a debt or to whom a debt is owed...." Moreover, 940 C.M.R. 7.03, promulgated under ch. 93, § 49, includes "any person and his agents, servants, employees, or attorneys engaged in collecting

a debt owed or alleged to be owed to him by a debtor ..." in the definition of a creditor. Andrews' allegations are sufficient to support a claim that the defendants fall within this definition.

Andrews has alleged that the defendants were acting as agents of Norfolk in collecting the judgment debt, and therefore, would qualify as creditors under the regulations quoted above. She has also alleged that the defendants were attempting to collect fees and poundage, which they claimed were due to them directly. This too would place them within the definition of "creditor" under the statute. Accordingly, the motion to dismiss Count II of the complaint is denied.

### C. *Mass. Gen. Laws ch. 93A*

In Count III, Andrews contends that the defendants have engaged in unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A. The defendants have moved to dismiss this count on the grounds that they were not engaged in trade or commerce as required under ch. 93A. For the reasons detailed herein, the motion to dismiss this count is denied as well.

█ Regulations promulgated under ch. 93A, in particular 940 C.M.R. 3.16(4), make a violation of the Federal Consumer Credit Protection Act, of which the FDCPA is a part, a *per se* violation of ch. 93A. These regulations have the force of substantive law. *See Purity Supreme, Inc. v. Attorney General,* 380 Mass. 762, 763, 407 N.E.2d 297, 299 (1980). Since Andrews has alleged a violation of the FDCPA, she also has alleged sufficient facts to establish an unfair and deceptive act or practice in violation of Mass. Gen. Laws ch. 93A. *See*

---

as constables and were not merely acting as special process servers as appointed by the court.

*Martin v. Sands,* 62 F.Supp.2d 196, 201 (D.Mass.1999) (violation of the FDCPA is a *per se* violation of ch. 93A). *See also Koonce,* 8 Mass.App.Ct. at 201, 392 N.E.2d at 551 (violation of Massachusetts Debt Collection Act, Mass. Gen. Laws ch. 93, § 49 is actionable under ch. 93A).

The defendants' reliance on *Cady v. Marcella,* 49 Mass.App.Ct. 334, 729 N.E.2d 1125 (2000), and *Foreign Car Ctr., Inc. v. Essex Process Serv., Inc.,* 62 Mass.App.Ct. 806, 821 N.E.2d 483 (2005), is misplaced. In those cases, the conduct complained of was the simple seizure of vehicles, and the court concluded that the act of seizing property did not constitute trade or commerce under ch. 93A. However, neither *Cady* nor *Foreign Car Center, Inc.* involved claims that the defendants had engaged in conduct which went beyond seizure and violated the FDCPA. Since a violation of the FDCPA is a *per se* violation of ch. 93A, the motion to dismiss Count III is denied.

### D. *Fraud*

The defendants have moved to dismiss Count IV of the Complaint, Andrews' claim of fraud, for failure to plead fraud with particularity, and for failure to allege reliance on or damages arising from any alleged misrepresentation. This court disagrees, and the motion to dismiss is denied.

A claim for damages from deceit requires proof that (1) the defendant made a misrepresentation of fact; (2) it was made with the intention to induce another to act upon it; (3) it was made with the knowledge of its untruth; (4) it was intended that it be acted upon, and that it was in fact acted upon; and (5) damage directly resulted therefrom.

*Equip. & Sys. for Indus., Inc. v. Northmeadows Constr. Co., Inc.,* 59 Mass.App. Ct. 931, 931, 798 N.E.2d 571, 574 (2003). Moreover, Fed.R.Civ.P. 9(b) requires that allegations of fraud and deceit be pleaded with particularity. Andrews has complied with these requirements.

In particular, but without limitation, Andrews has alleged throughout her complaint that the defendants misrepresented their status as constables, both orally and in writing. *See, e.g., Compl.* ¶¶ 9, 15, 21, 26, 41, 50, 73(h), Exs. 4 and 5. It is further alleged in detail that the defendants made misrepresentations about "the character, amount and legal status of the debt," *id.* ¶ 73(b), and threatened to take actions, such as threatening to sell the vehicle, which they had no intention or authority to take. *See, e.g., id.* ¶¶ 39, 49, 53–54, 62–64, 68, 73. Andrews further claims that she relied on these misrepresentations by filing a petition in bankruptcy to stop the sale of her vehicle, *id.* ¶ 65, and by borrowing money to pay for fees and costs. *Id.* ¶ 70. Thus, Andrews has sufficiently pled that the defendants made misrepresentations upon which she relied, and that she was damaged as a result of the defendants' wrongful conduct. *See id.* ¶ 92. Therefore, the motion to dismiss Count IV is denied.

### E. *Abuse of Process*

In Count V, Andrews has alleged that the defendants' conduct "constituted an abuse of process by using the execution as grounds to hold Ms. Andrews' car as collateral, after the balance on the judgment had been paid, in order to coerce her to pay unlawful "Constable," Towing and "Poundage" fees." *Compl.* ¶ 91. The defendants have moved to dismiss this count on the grounds that an execution does not constitute "process" for the purpose of an abuse of process claim, and that Andrews has failed to assert the elements of the claim. Principally, the defendants contend that because they acted lawfully, and claimed fees and costs to which they were

entitled, the abuse of process claim must fail. However, at this stage in the proceedings, Andrews has alleged sufficient facts to state a claim.

 "The elements of an abuse of process claim are that: (1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Gutierrez v. MBTA*, 437 Mass. 396, 407, 772 N.E.2d 552, 563 (2002) (quotations and citation omitted). Thus "[a]buse of process presupposes the use of legal action for an ulterior purpose, i.e., to achieve some end other than the apparent end of the litigation process which has been launched." *Silvia v. Bldg. Inspector of W. Bridgewater*, 35 Mass.App.Ct. 451, 453, 621 N.E.2d 686, 687 (1993), *rev. denied*, 416 Mass. 1109, 630 N.E.2d 603 (1993). "Process" for abuse of process purposes "refers to the papers issued by a court to bring a party or property within its jurisdiction," such as "writs of attachment, the process used to institute a civil action, and, the process related to the bringing of criminal charges." *Jones v. Brockton Pub. Mkts., Inc.*, 369 Mass. 387, 389–90, 340 N.E.2d 484, 486 (1975) (internal citations omitted).

Neither party has cited a case directly addressing whether an execution constitutes process for abuse of process purposes. However, in an unpublished decision, the Massachusetts Appeals Court stated in *dicta* that a writ of execution is "process" for purposes of Mass. R. Civ. P. 4, which deals with the service of process. *See Jackpot Provision Co., Inc. v. Lamb*, 69 Mass.App.Ct. 1113, 2007 WL 2163992, at *1 (July 27, 2007) (unpub. op.). In the instant case, the defendants clearly used the execution in order to seize Andrews' property, her car, and to bring it under the authority of the judicial process. In *Cady*, 49 Mass.App.Ct. at 341–42, 729 N.E.2d at 1132, the court assumed, without discussion, that the improper seizure of property pursuant to a writ of execution could be a "misuse of process" and constitute the basis for an abuse of process claim, even though the execution was properly obtained. That is the claim here. At this juncture, there is sufficient evidence of "process" to support an abuse of process claim.

Moreover, the plaintiff has sufficiently alleged an ulterior purpose, *i.e.*, the collection of fees to which the defendants were not legally entitled. Thus, the plaintiff has alleged "that the defendants were using the execution impermissibly as 'an instrument of persuasion rather than a means of satisfaction' " and, therefore, has stated a claim of abuse of process. *Id.* at 342, 729 N.E.2d at 1132 (quoting *Koonce*, 8 Mass. App.Ct. at 201, 392 N.E.2d at 551).

## IV. CONCLUSION

For all the reasons detailed herein, the Defendants' Motion to Dismiss (Docket No. 25)is DENIED. The parties are to submit a joint proposed scheduling order within ten (10) days of the date of this order.