In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 07-1878

KENTUCKIANA HEALTHCARE, INC.,

*Plaintiff-Appellant*,

*v.*

FOURTH STREET SOLUTIONS, LLC, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 4:04-CV-0022-DFH/WGH—**David F. Hamilton**, *Chief Judge*.

_____

ARGUED JANUARY 7, 2008—DECIDED FEBRUARY 19, 2008

_____


Before POSNER, ROVNER, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. This is a diversity suit, principally for conversion, governed by Indiana law. The Scott County Nursing & Wellness Center (SCNW) owned a health care facility that for a time was managed by Kentuckiana Healthcare, the plaintiff. Then defendant Fourth Street Solutions was substituted as manager, and SCNW also contracted for data-processing and accounting services from defendant Sage Health Services, an affiliate of Fourth Street. Sage was managed, so far as bears on this case, by Kenneth Ross and Joan Dugan. Ross

is another defendant, as is Dugan's estate (she died during the litigation).

After the substitution of Fourth Street Solutions for Kentuckiana, SCNW continued for a time to receive Medicare and Medicaid reimbursements for services that Kentuckiana had performed when it managed the health care facility. (Kentuckiana had been deemed the provider of the services and so had billed the government directly for them.) But SCNW failed to forward the reimbursements to Kentuckiana, which brought this suit to recover them. Initially it named SCNW as a defendant, but SCNW declared bankruptcy and Kentuckiana was unable to obtain any money from the bankrupt estate. It contends that the remaining defendants converted that reimbursement money and must therefore make Kentuckiana's loss good. The district court granted summary judgment for the defendants.

If the Medicare and Medicaid reimbursements were indeed Kentuckiana's property, then any of the defendants who, being without authorization to do so, exercised "control" over that property committed the tort of conversion. Ind. Code §§ 35-41-1-23, 43-4-3; *Inlow v. Inlow*, 797 N.E.2d 810, 818 (Ind. App. 2003); *Kopis v. Savage*, 498 N.E.2d 1266, 1270 (Ind. App. 1986); *Eggert v. Weisz*, 839 F.2d 1261, 1264-65 (7th Cir. 1988) (Illinois law). The defendants argue that the reimbursements were not the property of Kentuckiana but merely a debt owed to it, and the distinction between a debt and property is indeed critical in deciding whether there has been a conversion. *Stevens v. Butler*, 639 N.E.2d 662, 666-67 (Ind. App. 1994); *Kopis v. Savage*, *supra*, 498 N.E.2d at 1270-71. If you simply owe someone money and fail to pay it, you have broken a contract but you have not taken your creditor's

property. But suppose you render a service to someone, and he sends you a check, but by the time it arrives you have moved, and instead of forwarding the check the person who now lives at your old address deposits it in his account and invites you to sue him for it. That would be a clear case of conversion. This case is only a little less clear. Kentuckiana rendered services and billed Medicare and Medicaid, and they paid; but by the time they got around to paying, Kentuckiana had moved on. That did not entitle SCNW to put the money in its pocket.

But that is to say that *SCNW* converted the Medicare and Medicaid reimbursements, and it is no longer a defendant. In desperation Kentuckiana has sued two firms that rendered services to SCNW, and those firms' key managers. The critical question is whether SCNW's arrangements with those firms and individuals put them in its shoes so far as control over the receipt and disbursement of the reimbursements due Kentuckiana is concerned.

Fourth Street Solutions was to manage the health care facility on a day-to-day basis and its management re-sponsibilities included "participat[ion] in the financial management of the Facility," subject however "to the supervision and review of Owner," that is, of SCNW. Even apart from the "subject to" proviso, Fourth Streets Solu-tions' participation in financial management was limited. "All receipts and monies arising from the operation of the Facility shall be deposited in bank accounts to which representatives of Owner are signatories. Owner shall disburse and pay from such bank accounts all costs and expenses of the Facility, and Manager [Fourth Street Solutions] shall prepare checks for such disbursements by Owner." So Fourth Street Solutions had no authority

either to deposit the Medicare and Medicaid reimbursements for services provided by Kentuckiana in its own account or to forward those reimbursements to Kentuckiana. As for Sage Health Services, besides its data-processing duties, which are irrelevant to this case, it was to perform accounting services for SCNW such as preparation of tax documents, creation and maintenance of vendor payment plans, monitoring accounts receivable, and maintenance of the general ledger.

There is nothing in either contract to suggest that SCNW had ceded control over its finances to any of the defendants, whether jointly or severally (we are content to treat Fourth Street Solutions and Sage Health Services as a single entity for purposes of this appeal). But Kentuckiana argues that the relationship between SCNW and the defendants was different in practice from what the contracts said, and that could certainly be material to a claim of conversion—for suppose that having received the reimbursements SCNW had turned them over to Sage and told it to deposit them in a secret Swiss bank account. Nothing so egregious occurred. What did occur was that Dugan and Ross were added as signatories to SCNW's bank account. With suspicious coyness, Kentuckiana has made no effort to determine how often if ever either Dugan or Ross wrote and signed a check on the account without consulting the chief executive officer of SCNW. There is no evidence that they ever signed a large check. Since they had signature authority, they probably could have written a large check (Kentuckiana claims to be owed almost $400,000 in Medicare and Medicaid reimbursements, which seems a large amount, although we can find nothing either in the record or online to indicate the total budget of the health care facility). But almost

certainly that would have violated their contract with SCNW, which even if modified in practice was not, so far as the record indicates, modified beyond the modest extent that we have suggested.

But if the money in question was Kentuckiana's property, maybe the limitations of the contract did not bind Dugan and Ross. If an agent receives property on behalf of his principal but knows that a third party (in this case Kentuckiana) has a right to immediate possession of it, he must render the property to that third person or be guilty of conversion. *Thoms v. D.C. Andrews & Co.*, 54 F.2d 250, 252-53 (2d Cir. 1931); *Beckwith v. Independent Transfer & Storage Co.*, 141 S.E. 443 (W.Va. 1928); *Restatement (Second) of Torts* § 230 and comments b and d (1965); compare *Foreign Car Center, Inc. v. Essex Process Service, Inc.*, 821 N.E.2d 483, 489 (Mass. App. 2005). Alternatively, Dugan and Ross might be thought finders of property, and if they knew it belonged to Kentuckiana they would have been obliged to return it upon Kentuckiana's demand, *Employers Ins. of Wausau v. Titan International, Inc.*, 400 F.3d 486, 490-91 (7th Cir. 2005); *Hendle v. Stevens*, 586 N.E.2d 826, 833 (Ill. App. 1992); cf. Ind. Code § 32-34-1-26; Uniform Unclaimed Property Act § 7 (1995), minus the expense of returning it.

But there is a difference between a duty to render property in your control to one whom you know to be the true owner entitled to immediate possession, even if you are an agent of someone else, and a duty to assist in the return to the true owner of property that is not in your control. The Medicare and Medicaid reimbursements that Kentuckiana should have received were paid to SCNW and deposited in its bank accounts. Because Dugan and Ross had signing authority, they could have

written a check to Kentuckiana. But they were not the recipients of the reimbursements. SCNW was. You do not convert someone's property by failing to save it, unless you have a duty to do so; there is no general liability for failing to be a Good Samaritan even when you could save a person's life at no risk or other cost to yourself. *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 284-85 (Ind. 1994); *Stockberger v. United States*, 332 F.3d 479, 480-85 (7th Cir. 2003) (Indiana law). And here just property is at stake. If you noticed that your boss had in his office an Etruscan vase that under international art law belonged to the Italian government, you could not be sued just because you took no steps to restore the vase to its rightful owner. For you did not possess the vase; your control, like that of Dugan and Ross, was potential rather than actual.

Some states, it is true, impose a duty to report crimes, see, e.g., Colo. Stat. § 18-8-115, a duty that might or might not be enforceable in a civil suit. But Indiana does not, except with regard to child abuse or neglect. Ind. Code § 31-33-5-1. Nor is there any suggestion that the defendants committed crimes.

So the conversion claim fails, and while Kentuckiana also argues that the defendants should be treated as constructive trustees of the reimbursements, that they breached fiduciary duties to it, and that they were negligent in failing to transfer the reimbursements to it, it admits that these alternative formulations of its claim are all premised on the assumption that the reimbursements were property of Kentuckiana that the defendants controlled. They were property of Kentuckiana, all right, but the defendants did not control it, and so these claims fall with the conversion claim.

AFFIRMED

A true Copy:

      Teste:

                                  _____

                                *Clerk of the United States Court of*
                                    *Appeals for the Seventh Circuit*