# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 07-3746

AMERICAN NATIONAL INSURANCE COMPANY,

*Plaintiff-Appellant*,

*v.*

CITIBANK, N.A.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 3390—**Joan B. Gottschall**, *Judge.*

_____

ARGUED APRIL 16, 2008—DECIDED SEPTEMBER 11, 2008

_____

Before EASTERBROOK, *Chief Judge*, and WOOD and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Many rules of commercial law allocate risk among different parties to transactions. Sometimes, however, it is impossible to impose responsibility for losses on the party that caused them. People disappear with ill-gotten gains, or they spend someone else's money on fleeting pleasures. At that point, all that can be done is to allocate loss to one or another

relatively innocent party. This is such a case: the real wrongdoer, Robert Carter, will never be able to restore the money he embezzled from his employer, National Accident Insurance Underwriters ("Underwriters"). So we must decide whether Underwriters' assignee, American National Insurance Company ("ANICO") must bear the loss that remains, or if the bank that cashed checks that Carter had altered to make payable to himself is responsible.

ANICO had engaged Underwriters to act as an agent for managing an insurance pool known as "NAIG," for National Accident Insurance Group Underwriting Agreement. One of the duties Underwriters assumed was to receive premium payments for the insurance pool, in the form of checks payable either to Underwriters or NAIG; it also had the job of managing the premium trust account into which the premiums were deposited. In 2002, Underwriters discovered that one of its vice presidents, Robert Carter, had been intercepting premium checks, altering the payee line to make them payable to himself or his company "Sherman Imports," and depositing them in a Citibank account over which he had control. Citibank accepted 44 altered checks, from five different drawers, for a total face value of $15,813,964.84.

Underwriters filed suit against Citibank for conversion of the checks under 810 ILCS 5/3-420, the Illinois version of Uniform Commercial Code § 3-420, which provides the rule for dealing with the conversion of negotiable instruments. Citibank then filed a third-party

complaint against Carter and other people involved with his scheme. ANICO moved to intervene in 2003, eventually filing a complaint against Citibank also based on § 3-420. Carter pleaded guilty to criminal charges of mail and tax fraud in 2004; as part of his plea, he forfeited $5.2 million in property to Underwriters. At that point, Underwriters assigned its interests in this property to ANICO. In 2006, Underwriters and Citibank settled, and all claims arising from that suit were dismissed with prejudice.

This left the litigation between ANICO and Citibank unresolved. In August 2007, the district court granted Citibank's motion for summary judgment against ANICO on all of its claims. Citibank still had unresolved claims pending against Carter and others, and so ANICO asked the district court to direct entry of a partial final judgment on its suit against Citibank, on the ground that there was no just reason to delay resolution. See FED. R. CIV. P. 54(b). The court did so, and the appeal is now before us. We review the court's decision to grant summary judgment *de novo*. *APS Sports Collectibles, Inc. v. Sport Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002).

We begin with the language of UCC § 3-420, as adopted by Illinois:

> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action

for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

(b) In an action under subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.

(c) A representative, other than a depositary bank, that has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

810 ILCS 5/3-420. In order to establish that a financial institution is liable for conversion of a negotiable instrument in Illinois, a plaintiff must prove (1) her ownership of, interest in or right to possession of the check; (2) the fact that her apparent endorsement of the check was forged or unauthorized; and (3) the fact that the defendant bank was not authorized to cash the check. *Continental Casualty Co. v. American National Bank and Trust Co. of Chicago,* 768 N.E.2d 352, 361 (Ill. App. Ct. 2002); see also *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 439 (7th Cir. 2005) (describing Illinois law). Our case turns on the first of these three elements: whether ANICO had any property interest in the checks. If not, then ANICO may not bring a suit for conversion. (Otherwise, the final clause of § 3-420(b) would make little sense, as it limits

recovery to "the amount of the plaintiff's interest in the instrument." See, *e.g., Edwards v. Allied Home Mortgage Capital Corp.,* 962 So. 2d 194 (Ala. 2007) (construing Alabama's version of § 3-420).)

ANICO asserts that it is the "true owner" of the checks, and thus that it has enough of an ownership interest to permit it to pursue this suit. Underwriters managed and administered the premium trust account. The checks were made out to Underwriters or NAIG; ANICO admits that the checks were never made out to it, nor was it ever an indorsee. ANICO had no signatory or drawing rights on the account and could not touch the funds. Instead, Underwriters wrote a check to ANICO each month based on the fees it had collected and deposited into the account. ANICO argues nevertheless that it is the "true owner" of the checks, relying on some kind of quasi-trust theory. Underwriters, it reasons, acted as ANICO's agent, and ultimately all of the funds in the premium trust account (minus Underwriters' fees) belonged to ANICO; Underwriters simply administered the premium trust account for ANICO's benefit. Thus, ANICO contends, it has at least an equitable interest in the checks, no matter what the "Pay To the Order Of" line might have said.

This novel interpretation of the familiar drawer-drawee-indorsee-payee relationship is unprecedented, and for good reason: it betrays the fundamental axiom of negotiable instruments that banks must pay the payee. ANICO cites a case from a trial-level court in New York to support its argument that this rule has its exceptions, but we do not find it persuasive. See *Clients' Security Fund of*

*N.Y. v. Goldome*, 560 N.Y.S.2d 84 (N.Y. Sup. Ct. 1990). ANICO seems oblivious to the burden that its theory would put on every bank that was presented with a check for negotiation. Instead of being able to look at the payee line and to verify that the person presenting the check was indeed entitled to do so, banks in ANICO's world would need to conduct a full-blown investigation every time to make sure that a party with an equitable interest in the check was not lurking in the background. Such a system would bring commercial transactions to a grinding halt.

The payee on the 44 checks at issue here, before Carter unlawfully altered them, was Underwriters or NAIG, never ANICO. Not surprisingly, Underwriters sued Citibank and secured a settlement; it also assigned the $5.2 million that was recovered from Carter to ANICO.

ANICO appears to be confusing an interest in the funds backing the checks with an interest in the checks themselves. Perhaps it is the ultimate beneficiary of the funds. Once Underwriters received the checks, it owed ANICO most of the money, according to the terms of a separate contract. The terms of this debt, however, are tied to this ancillary contract, not the negotiable instruments in question. We considered a similar situation in *Kentuckiana Healthcare, Inc. v. Fourth Street Solutions, LLC*, 517 F.3d 446 (7th Cir. 2008), where we held that a party to whom a debt was owed was not entitled to sue for conversion. See *id.* at 447.

Illinois courts do not recognize an action for conversion of intangible rights. *Janes v. First Federal Savings & Loan*

*Ass'n.*, 297 N.E.2d 255, 260 (Ill. App. Ct. 1973). The rights involved with commercial paper merge into the document, a tangible thing, and thus conversion of the document is possible. *Hayes v. Massachusetts Mutual Life Ins. Co.*, 18 N.E. 322, 325 (Ill. 1888). The rights associated with Underwriters' separate contract with ANICO, on the other hand, are intangible and do not merge into the negotiable instruments. Unless ANICO can show a possessory interest in the checks, it cannot sue for conversion, because its only interest is a derivative claim to the funds, not a claim to the instruments themselves.

The payee does have a property interest in checks made out to her, as does the indorsee. ANICO is neither and has not succeeded in showing how the "true owner" entity it posits fits into the real world of payees, drawers, drawees, and indorsees. These roles carry specific and well established meanings: for the reasons we have already mentioned, banks cannot be asked to go beyond the name on the payee line except where due care demands it. If banks were required to look behind the names on the check itself and delve into the contractual relationships of named payees and other, unnamed entities, writing checks would become an impossibility. It is precisely in order to maintain a workable financial system that the UCC does not resort to generalities like the "true owner" and instead insists on terms of art like "payee."

To summarize, ANICO has no property interest in the checks at issue here: it is not a payee, indorsee, or any other entity recognized upon the instruments themselves.

To the extent that it has any relevant property interest, it is in the funds backing the checks, and its interest in those funds is determined by a separate contract. That contract is not merged into the checks, however, and therefore at most gives rise to an intangible right. While Illinois permits suits for conversion of negotiable instruments by those with a possessory interest, it does not recognize causes of action on intangible rights.

Underwriters does have a clear property interest: it is the named payee. Banks must pay the payee, and if there is a question in a particular case about that obligation, the payee may sue. Underwriters did and reached a settlement. If ANICO has any dispute, it is with Underwriters, under the terms of the agreements that govern their relationship. ANICO has no dispute with Citibank, and so the district court's grant of summary judgment against ANICO and in favor of Citibank is AFFIRMED.