**FILED**

**OCTOBER 19, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DARLA K. DEHLIN, a single person, | ) | No. 34407-0-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FORGET ME NOT ANIMAL SHELTER, | ) | |
| KIM GILLEN, JOHN DOE(S), | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Darla Dehlin appeals the trial court's summary

judgment dismissal of her conversion, trespass to property, and civil conspiracy claims

against Forget Me Not Animal Shelter (Forget Me Not), as well as the trial court's

imposition of CR 11 sanctions against her attorney. The claims arose after Forget Me

Not's director e-mailed the sheriff's office to report suspected animal neglect on Ms.

Dehlin's property. The sheriff's office obtained a warrant to seize the dogs and then

asked Forget Me Not to provide volunteers and vehicles to assist in impounding them.

Because Forget Me Not was not the entity that seized the dogs, but rather

transported and stored them on behalf of the sheriff's office, we conclude the trial court

properly dismissed Ms. Dehlin's conversion and trespass to property claims. Moreover, because no evidence indicates Forget Me Not intended or agreed to accomplish anything unlawful, we conclude the trial court properly dismissed her civil conspiracy claim. We also conclude that the trial court did not abuse its discretion by imposing CR 11 sanctions. Accordingly, we affirm.

## FACTS

Forget Me Not is a nonprofit animal shelter located in Republic, Washington. Its volunteer executive director is Kim Gillen. It is not a humane society, and its volunteers cannot perform welfare checks. Thus, when it receives complaints of animal abuse or neglect, it forwards them to the Ferry County Sheriff's Office for investigation.

In June 2011, a woman named Laura Bernier e-mailed Ms. Gillen, inquiring about what county agency investigates animal abuse and neglect. Ms. Gillen informed Ms. Bernier that Ferry County did not have an animal control agency, and that the sheriff's office investigates reports of animal abuse and neglect. Ms. Gillen gave Ms. Bernier the sheriff's office's phone number, but Ms. Bernier apparently did not follow up.

Later in 2011, Ms. Bernier again e-mailed Ms. Gillen. This time, she expressed concern for the welfare of a number of Ms. Dehlin's dogs. Ms. Bernier stated that her friend had bought several puppies from Ms. Dehlin and that when her friend received

2

them, one was emaciated, had an infection, and had worms. Ms. Bernier believed Ms. Dehlin did not live full-time at the house and only checked on the dogs once or twice per week.

Ms. Gillen e-mailed the Ferry County Sheriff, Pete Warner, and outlined the information she received from Ms. Bernier. She advised Sheriff Warner that she did not know where Ms. Dehlin lived, but that she had instructed Ms. Bernier and her friend to contact him. Sheriff Warner was never contacted about the situation.

On September 17, 2012, Ms. Gillen received another e-mail from Ms. Bernier, again expressing concern for the welfare of Ms. Dehlin's dogs. This e-mail contained Ms. Dehlin's physical address.

Ms. Gillen forwarded Ms. Bernier's e-mail to Sheriff Warner and requested a welfare check. She asked Sheriff Warner to let her know if any dogs were in immediate need so she could arrange to bring them into the shelter. She stated she would coordinate with an organization called Poodle Club of America Rescue (PCAR) if needed. Sheriff Warner assigned the welfare check to Deputy Patrick Rainer.

On September 18, Deputy Rainer drove to Ms. Dehlin's address. Ms. Dehlin had a gate at her driveway, which was marked with no trespassing signs. However, the gate was unlocked. Deputy Rainer drove up the driveway and parked in front of several dog

3

kennels. These kennels were not visible from the roadway. The property appeared to be abandoned.

Deputy Rainer saw at least 15 dogs in four separate kennels, including both adult dogs and puppies. He believed the living conditions in the kennels were unsanitary and believed the hair on several of the dogs was matted and coated in feces. In addition to the dogs in the kennels, Deputy Rainer also saw one dog running around unrestrained, another dog chained up, and at least 10 young puppies in an upside-down animal transport carrier.

After leaving Ms. Dehlin's property, Deputy Rainer applied for a warrant to search Ms. Dehlin's residence for evidence of second degree animal cruelty and to seize all the dogs. He relied on his observations from Ms. Dehlin's property as well as Ms. Gillen's e-mails to support his application. The trial court issued the warrant the same day. The warrant instructed the sheriff to search Ms. Dehlin's residence, seize the dogs, and keep them safely.

Later in the day on September 18, Sheriff Warner informed Ms. Gillen that the sheriff's office had obtained a warrant to remove all of the dogs from Ms. Dehlin's property. Sheriff Warner stated the sheriff's office did not have enough personnel or vehicles available to transport 27 dogs. He asked Forget Me Not to provide volunteers

4

and vehicles to assist the sheriff's office in removing the dogs. Forget Me Not then arranged for available volunteers to accompany Deputy Rainer and Deputy Talon Venturo to Ms. Dehlin's residence. At roughly 5:00 p.m., Ms. Gillen and several volunteers met at the sheriff's office. They then followed the two deputies out to Ms. Dehlin's address.

The Forget Me Not volunteers waited at the end of Ms. Dehlin's driveway while the deputies cleared the scene. Once they were given permission to proceed up the driveway, the volunteers followed the deputies through the scene. The deputies identified the dogs that the sheriff's office was removing from the property under the search warrant.

Once the dogs were all loaded into vehicles, the sheriff's office had the dogs transported either to a foster home, Forget Me Not's shelter, a veterinary clinic, or an animal care facility. Over the next few days, a veterinarian visited the dogs. The sheriff's office retained responsibility for the dogs' medical care and boarding fees while the dogs were impounded, and the sheriff's office received invoices for their care. Throughout the next month, the dogs received vaccinations, exams, microchips, and dewormer. They were also spayed and neutered. Forget Me Not began accepting applications from individuals who were interested in adopting the dogs.

On October 20, the Ferry County Prosecuting Attorney notified Forget Me Not and PCAR that an agreement—in which Ms. Dehlin would relinquish ownership of the dogs in exchange for no criminal action being taken against her—was imminent. He advised Forget Me Not and PCAR that they could begin preparing to transfer the dogs to more permanent housing.

On October 29, Ms. Dehlin wrote a letter to the Ferry County Prosecuting Attorney relinquishing her ownership of the poodles. She stated she relinquished ownership to PCAR, which had agreed to accept the poodles and incur the costs associated with taking possession of them. She further stated that in exchange for relinquishing the poodles, she understood that the State agreed not to charge her with any crime. However, she felt coerced into relinquishing the dogs based on threats and intimidation from members of the community, Facebook posts by Forget Me Not, "and a general hostile public atmosphere." Clerk's Papers (CP) at 61. She also felt pressured by the prosecuting attorney, Ms. Gillen, and the president of PCAR.

Around this time, PCAR began assigning the dogs to individuals and rescue organizations. PCAR asked Forget Me Not to place several dogs with individuals who had previously submitted applications. These individuals signed adoption contracts on October 27, October 30, November 5, and November 8. PCAR assigned the rest of the

6

dogs to poodle rescues in Nevada and Arizona. PCAR scheduled a commercial transporter to pick up the dogs. Forget Me Not incurred $17,981.86 in costs from boarding the dogs and providing them medical care. It recovered $13,941.60 from community donations, reimbursements from the sheriff's office, and adoption fees.

On October 31, Ms. Dehlin e-mailed the president of PCAR. She stated she was upset with how PCAR was placing her former poodles. In a follow-up e-mail later that evening, she stated she was "rescinding the relinquishment to PCAR." CP at 67. She asked PCAR's president to keep her e-mail confidential. There is no evidence Ms. Dehlin ever communicated her intent to rescind the relinquishment to Forget Me Not, the prosecuting attorney, or the sheriff's office.

## PROCEDURE

In September 2015, Ms. Dehlin filed a complaint naming Forget Me Not, Ms. Gillen, and Forget Me Not's volunteers as defendants. She brought claims for civil conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, trespass to property, conversion, and assault. In its answer, Forget Me Not asserted affirmative defenses and stated it was entitled to an award of sanctions under CR 11.

7

Ms. Dehlin filed a separate lawsuit against Ferry County, the Ferry County Sheriff's Office, Sheriff Warner, Deputy Rainer, and Deputy Venturo. She brought a 42 U.S.C. § 1983 claim, in which she alleged the search of her property and seizure of her dogs violated her constitutional rights. That suit was removed to federal court.

Forget Me Not moved for summary judgment on all of Ms. Dehlin's claims. Ms. Dehlin stipulated to the dismissal of her assault claim. The trial court granted summary judgment in favor of Forget Me Not. Ms. Dehlin filed a notice of appeal from this order.

After the trial court granted summary judgment, Forget Me Not moved for attorney fees and costs on the grounds that Ms. Dehlin's counsel violated CR 11. The trial court granted Forget Me Not's motion. The court found that Ms. Dehlin's counsel violated CR 11 by asserting the claims for assault, intentional inflection of emotional distress, and negligent infliction of emotional distress. With respect to these three claims, the court found that counsel did not have knowledge, information, or belief based on a reasonable inquiry that they were grounded in fact, supported by existing law, or that a good faith argument existed for extending the law. However, the court found that counsel did not violate CR 11 by asserting the claims for conversion, trespass to property, or civil conspiracy. The court awarded Forget Me Not $2,500 for the unnecessary fees and costs it incurred in defending against the three baseless claims.

8

No. 34407-0-III
*Dehlin v. Forget Me Not Animal Shelter*

## ANALYSIS

This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. *Kim v. Lakeside Adult Family Home*, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one the outcome of the litigation depends on. *In re Estate of Black*, 153 Wn.2d 152, 160, 102 P.3d 796 (2004). This court views all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Kim*, 185 Wn.2d at 547. Summary judgment is appropriate only if a reasonable person could reach one conclusion from all the evidence. *Id.*

A defendant moving for summary judgment has the initial burden of showing that there is no issue of material fact. *Barker v. Advanced Silicon Materials, LLC*, 131 Wn. App. 616, 624, 128 P.3d 633 (2006). Once the defendant does this, the burden shifts to the plaintiff to produce admissible evidence that alleges specific facts establishing a cause of action. *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993).

9

When reviewing a civil case in which the standard of proof is clear, cogent, and convincing evidence, this court "'must view the evidence presented through the prism of the substantive evidentiary burden.'" *Woody v. Stapp*, 146 Wn. App. 16, 22, 189 P.3d 807 (2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The burden of proof for civil conspiracy claims is clear, cogent, and convincing evidence. *Id.* Thus, this court must determine whether, viewing the evidence in the light most favorable to Ms. Dehlin, a rational trier of fact could find that she supported her conspiracy claim with clear, cogent, and convincing evidence. *Id.*

CONVERSION AND TRESPASS TO PROPERTY CLAIMS

Ms. Dehlin argues that Forget Me Not converted and trespassed on her poodles by spaying, neutering, and holding them out for adoption before she had formally relinquished them. She argues she was coerced into relinquishing the poodles, and that she rescinded her relinquishment three days later. She further argues that chapter 16.52 RCW's requirements governing the seizure of animals were not followed.

Conversion is the exercise of dominion or ownership over another's personal property. *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 78, 196 P.3d 691 (2008). It occurs when one willfully interferes with another's property without justification and deprives the other person of possession. *Id.* This can occur when one wrongfully takes, alters,

10

misdelivers, or disposes of the other person's property. *See* RESTATEMENT (SECOND) OF

TORTS § 223 (1965). "All types of tangible personal property can be converted."

16 DAVID K. DEWOLF & KELLER W. ALLEN, WASH. PRACTICE: TORT LAW AND

PRACTICE § 14:16, at 587 (4th ed. 2013) (hereinafter DEWOLF).

Generally, an agent is personally liable when he or she assists a principal in

converting or trespassing on another's property, even if the agent acts at the direction of

the principal and performs the acts solely for the principal's benefit. *Dodson v. Econ.*

*Equip. Co.*, 188 Wash. 340, 343, 62 P.2d 708 (1936); RESTATEMENT (SECOND) OF

AGENCY § 349 (1958); 2A C.J.S. *Agency* § 374, at 636 (2003). When this occurs, the

agent is liable to the extent he or she aided or abetted in the consummation of the wrong.

*Martin v. Sikes*, 38 Wn.2d 274, 278, 229 P.2d 546 (1951). However,

> [a] bailee, agent, or servant who receives the possession of a chattel for
> storage, safekeeping, or transportation on behalf of his bailor, principal, or
> master, is subject to liability for conversion if, but only if, he does so with
> knowledge or reason to know that a third person has the right to immediate
> possession of the chattel.

RESTATEMENT (SECOND) OF TORTS § 230.

The distinction between the rule and the exception is not well defined. However,

an instructive case is *Foreign Car Center, Inc. v. Essex Process Service, Inc.*, 62 Mass.

App. Ct. 806, 821 N.E.2d 483 (2005). There, a bank recovered a judgment against

11

Foreign Car Center, a car dealership and repair center. *Id.* at 807. The bank then obtained a writ of attachment. *Id.* at 808. A deputy sheriff, acting pursuant to the writ, engaged a towing company and went to Foreign Car Center's place of business. *Id.* Upon arriving, he could not locate the owner and thus did not immediately serve the writ of attachment. *Id.* He began seizing vehicles and instructing the towing company to tow them away. *Id.* The owner eventually arrived and the deputy sheriff showed him the writ. *Id.* The owner complained the towing company towed the cars in a rough and damaging manner. *Id.*

The deputy sheriff lost the original writ and thus never returned it to court, as was required. *Id.* at 809, 811 n.9. Due to issues with the vehicles' titles, the sheriff's sale also did not occur within 30 days of the seizure, as was required by statute. *Id.* at 810, 811 n.9.

Foreign Car Center sued the bank, the deputy sheriff, the process company that employed the sheriff, and the towing company for, among other things, conversion. *Id.* at 806, 810. At trial, the court instructed the jury that it could find the deputy sheriff and process company liable for conversion, but not the bank or the towing company. *Id.* at 813.

12

The Massachusetts Appeals Court agreed. *Id.* at 815. It held that the procedural violations of the collections laws "were strictly the responsibility of the sheriff" and did not support a cause of action for conversion against the bank. *Id.* at 813-14. The court further held that an instruction for conversion against the towing company would have been improper. *Id.* at 814. Relying on *Restatement (Second) of Torts* § 230, the court reasoned that Foreign Car Center presented no evidence, nor did it argue on appeal, that the towing company knew or should have known that the deputy sheriff and process company were converting Foreign Car Center's property. *Id.*

Here, even if we assume without deciding that: (1) Ms. Dehlin did not consent to the torts when she relinquished her dogs, and (2) the seizure of her dogs was illegal and without justification, her conversion claim still fails because Forget Me Not was not the entity responsible. Although an agent is generally liable when he or she converts property at a principal's direction and for the principal's benefit, in this case there is no genuine dispute that the exception outlined in *Restatement (Second) of Torts* § 230 applies.

First, Forget Me Not possessed the dogs on behalf of the sheriff's office for transportation and then for storage. Like in *Foreign Car Center*, where the deputy sheriff seized the cars and engaged the towing company to tow them away, Deputy Rainer and Deputy Venturo identified the dogs the sheriff's office intended to seize under the warrant

13

and asked Forget Me Not to assist in removing them. After the sheriff's office housed the dogs in various locations, which included Forget Me Not's shelter, it retained responsibility for them.

Second, Forget Me Not did not know, or have reason to know, that Ms. Dehlin had the right to immediately possess the dogs. After making the report to Sheriff Warner, the next information Forget Me Not received was that the sheriff's office had obtained a warrant to remove all of the dogs from Ms. Dehlin's property. Forget Me Not was not involved in the welfare check or the warrant application. Ms. Dehlin argues that chapter 16.52 RCW's requirements for the seizure of animals were not followed, but as discussed in *Foreign Car Center*, this was not Forget Me Not's responsibility.

Like in *Foreign Car Center*, where the deputy sheriff seized the cars pursuant to a court order and the towing company had no way of knowing the cars were being converted, here the sheriff's office seized the dogs pursuant to a search warrant and Ms. Dehlin presents no evidence, nor does she argue, that Forget Me Not knew or should have known that she had a right to immediately possess the dogs. In light of Forget Me Not's evidence, the burden shifts to Ms. Dehlin to produce evidence establishing a cause of action. She has not met this burden. We conclude the trial court did not err in dismissing Ms. Dehlin's conversion claim on summary judgment.

14

Trespass to property, on the other hand, is something less than a conversion. DEWOLF, *supra*, § 14:15, at 585. It occurs when a person intentionally interferes with the possession or physical condition of another's personal property without justification. *Id.* Here, Forget Me Not took and cared for the dogs pursuant to the sheriff's request, supported by a warrant. Forget Me Not had no reason to believe that the warrant was wrongfully issued. Later, Forget Me Not began placing the dogs at the request of PCAR at a time when Forget Me Not reasonably believed that Ms. Dehlin had given up her rights to the dogs. Because these facts are not contested and establish justification for Forget Me Not's actions, the trial court did not err in dismissing Ms. Dehlin's trespass to property claim.

CIVIL CONSPIRACY CLAIM

Ms. Dehlin argues Forget Me Not conspired to illegally seize her dogs. She argues the e-mails between Ms. Gillen, Ms. Bernier, and Sheriff Warner are evidence of the conspiracy. She further argues the search warrant was invalid because it was not supported by probable cause, and it contained secondhand and unreliable information.

To establish a claim for civil conspiracy, plaintiffs "'must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and

15

(2) the conspirators entered into an agreement to accomplish the conspiracy.'" *Woody*, 146 Wn. App. at 22 (quoting *All Star Gas, Inc. v. Bechard*, 100 Wn. App. 732, 740, 998 P.2d 367 (2000)). To establish civil conspiracy, a plaintiff must show that the factual circumstances are "inconsistent with a lawful or honest purpose and reasonably consistent only with the existence of the conspiracy." *John Davis & Co. v. Cedar Glen No. Four, Inc.*, 75 Wn.2d 214, 224, 450 P.2d 166 (1969).

To conspire, a person must be aware of the illegality. *See All Star Gas*, 100 Wn. App. at 741. For example, in *All Star Gas*, one of All Star Gas's managers had a clause in his employment contract prohibiting him from competing with the business for three years after ending his employment. *Id.* at 734. A few months before resigning, he started a gas business with his brother, using information he obtained through his employment with All Star Gas. *Id.* at 734-35. All Star Gas sued both the employee and his brother, alleging they both conspired to violate the noncompetition agreement. *Id.* at 735. The trial court dismissed the conspiracy claims. *Id.* at 736.

This court affirmed. *Id.* at 740. This court reasoned that the brother did not know about the noncompetition agreement and, therefore, could not have conspired to violate an agreement that he did not know existed until after the alleged conspiracy had occurred. *Id.* at 741. This court further reasoned that nothing in the record suggested the brother

16

had an unlawful motive or used unlawful means when he agreed to form the new business. *Id.*

"A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization." RCW 4.24.510. The legislature enacted this statute to encourage citizens to report potential wrongdoing to governmental entities. *Gontmakher v. City of Bellevue*, 120 Wn. App. 365, 366, 85 P.3d 926 (2004). This statute provides immunity even if a person makes a report in bad faith.[1] *See* DEWOLF, *supra*, § 12:22, at 503; *Bailey v. State*, 147 Wn. App. 251, 260-63, 191 P.3d 1285 (2008).

Ms. Dehlin argues the e-mails between Ms. Gillen, Ms. Bernier, and Sheriff Warner demonstrate the existence of a conspiracy.[2] But the e-mails do not establish that any of the parties intended or agreed to accomplish anything *unlawful*. Rather, Ms. Bernier forwarded her concerns about the dogs to Ms. Gillen, who appropriately

---

[1] Former RCW 4.24.510 (1999) expressly contained a good faith requirement. In 2002, the legislature deleted the phrase "in good faith" preceding "communicates a complaint or information" in the first sentence of the statute. *See* LAWS OF 2002, ch. 232, § 2.

[2] Ms. Dehlin also argues the prosecuting attorney and PCAR's president conspired to convince her to relinquish her dogs, but it is unclear how this involves Forget Me Not.

forwarded them to law enforcement. To the extent Ms. Dehlin argues that Forget Me Not conspired based on its report to the sheriff's office, RCW 4.24.510 immunizes Forget Me Not from liability. This is true even if Ms. Gillen's report was motivated by some preexisting grudge against Ms. Dehlin or a desire to "take" the dogs from her. CP at 58.

Ms. Dehlin also argues that the warrant was illegally obtained and lacked probable cause. As discussed above, Forget Me Not did not participate in the welfare check or the warrant application, and nothing in the record suggests it was aware of any alleged deficiencies with the warrant or believed the seizure of the dogs would be unlawful when it agreed to assist the sheriff's office.

Accordingly, Ms. Dehlin failed to establish a prima facie case of civil conspiracy by clear, cogent, and convincing evidence. The trial court did not err in dismissing this claim on summary judgment.[3]

TRIAL COURT'S IMPOSITION OF CR 11 SANCTIONS

Ms. Dehlin challenges the trial court's imposition of CR 11 sanctions.[4] This court

---

[3] Ms. Dehlin does not challenge the trial court's dismissal of her claims for intentional and negligent infliction of emotional distress.

[4] Although Ms. Dehlin did not appeal from either of the CR 11 orders, "[a]n appeal from a decision on the merits of a case brings up for review an award of attorney fees

18

reviews an award of CR 11 sanctions for an abuse of discretion. *Stiles v. Kearney*, 168

Wn. App. 250, 260, 277 P.3d 9 (2012).

> When an attorney signs a court filing, the attorney certifies that
>
> to the best of the . . . attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) [the pleading, motion, or memorandum] is well grounded in fact; [and] (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law. . . .

CR 11(a). If an attorney signs a pleading in violation of this rule, the court may impose

an appropriate sanction, which may include an order to pay the other party the reasonable

expenses incurred because of the filing. CR 11(a).

### 1. *Timely notice*

Ms. Dehlin first argues that Forget Me Not's request for CR 11 sanctions was

untimely. She argues that the statement in its answer that it was entitled to CR 11

sanctions was insufficient and that it should have moved for CR 11 sanctions at the outset

of the case.

---

entered after the appellate court accepts review of the decision on the merits." RAP
2.4(g).

Attorneys and judges who perceive a possible violation of CR 11 must bring it to the offending party's attention as soon as possible. *Biggs v. Vail*, 124 Wn.2d 193, 198, 876 P.2d 448 (1994). Without timely notice, CR 11 sanctions are unwarranted. *Id.* The purpose of this requirement is to give the offending party an opportunity to mitigate the sanction by amending or withdrawing the baseless filing. *Id.* Another reason is to deter the offending party from submitting additional baseless filings. *Id.*

An answer to the initial complaint provides sufficient notice that the defendant intends to seek CR 11 sanctions. *Stiles*, 168 Wn. App. at 264. In *Stiles*, the defendant's answer sought dismissal of the complaint and attorney fees under CR 11. *Id.* at 255. After conducting discovery, the defendant moved for summary judgment. *Id.* The trial court granted the defendant's motion. *Id.* at 256. Roughly one month later, the defendant moved for CR 11 sanctions, which the trial court imposed. *Id.* The *Stiles* court held that the defendant's notice in his answer was timely and that it gave sufficient notice of his intent to seek CR 11 sanctions. *Id.* at 264.

The facts regarding notice of CR 11 sanctions in this case are identical to those in *Stiles*. Ms. Dehlin, therefore, received timely notice of Forget Me Not's intent to seek CR 11 sanctions.

2. *Appropriateness of sanctions when other claims are nonfrivolous*

Ms. Dehlin also argues that CR 11 sanctions were not appropriate because some of her claims were nonfrivolous. She cites *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 829 P.2d 1099 (1992). First, *Bryant* does not require that all claims be frivolous before a court can impose CR 11 sanctions. *Id.* at 220. Second, *Biggs v. Vail* makes clear that a trial court may impose CR 11 sanctions as to those portions of the complaint deemed frivolous. 124 Wn.2d at 200-01.[5]

3. *Factual and legal bases and reasonable inquiry*

Ms. Dehlin further argues that substantial evidence does not support the trial court's finding that her claims for assault, intentional infliction of emotional distress, and negligent infliction of emotional distress lacked a factual or legal basis. She also argues the trial court did not inquire or make a finding as to whether her counsel conducted a reasonable inquiry before signing the complaint.

---

[5] In this respect, CR 11 sanctions are more easily imposed than sanctions under RCW 4.84.185. For sanctions to be imposed under RCW 4.84.185, the action, counterclaim, cross-claim, third party claim, or defense must be deemed frivolous in its entirety and advanced without reasonable cause.

21

To impose sanctions for a baseless filing under CR 11, the trial court must find: (1) that the claim was without a factual or legal basis, and (2) that the attorney who signed the filing did not conduct a reasonable inquiry into the factual and legal basis of the claim. *West v. Wash. Ass'n of County Officials*, 162 Wn. App. 120, 135, 252 P.3d 406 (2011). A trial court may consider a number of factors in determining whether counsel conducted a reasonable inquiry, including the time counsel had available and the complexity of the issues. *See Bryant*, 119 Wn.2d at 220-21.

Here, substantial evidence supports the trial court's finding that the three baseless claims lacked factual or legal support. Ms. Dehlin never presented any evidence an assault occurred. Moreover, her assault claim was barred by the statute of limitations, as she filed her complaint three years after the incident. *See* RCW 4.16.100 (statute of limitations for assault and battery is two years). She never presented any evidence that Forget Me Not *intended* to inflict emotional distress. *See Womack v. Rardon*, 133 Wn. App. 254, 261, 135 P.3d 542 (2006) (trial court properly dismissed outrage claim where immolation of plaintiff's cat, though deplorable, was not intended to bring about distress). Finally, a pet owner has no right to "recover damages for negligent infliction of emotional distress . . . for the negligent death or injury of a pet." *Sherman v. Kissinger*, 146 Wn. App. 855, 873, 195 P.3d 539 (2008).

22

The trial court also found that Ms. Dehlin's counsel failed to conduct a reasonable inquiry into whether the baseless claims had factual or legal support. *See* CP at 251; Report of Proceedings (RP) at 90. Ms. Dehlin appears to argue that the trial court erred by failing to perform an on-the-record inquiry into counsel's actual prefiling investigation. Although such an inquiry would be helpful for appellate review, Ms. Dehlin cites no authority that holds this is *required*. A trial court may consider multiple factors in making its determination, which have varying degrees of relevance to the actual investigation counsel conducted. *See Bryant*, 119 Wn.2d at 220.

Here, the trial court expressly considered the fact that Ms. Dehlin filed her complaint shortly before most of the statutes of limitation expired, causing her to throw "everything . . . against the wall hoping something would stick." RP at 90. Moreover, the fact that one of the claims was barred by a statute of limitations and two others were clearly barred as a matter of law indicates counsel did not reasonably investigate before filing the complaint. *See* RP at 89.

For the reasons set forth above, we conclude the trial court did not abuse its discretion in imposing CR 11 sanctions.

23

No. 34407-0-III
*Dehlin v. Forget Me Not Animal Shelter*

ATTORNEY FEES ON APPEAL

Forget Me Not requests attorney fees under RAP 18.9 on the basis that Ms. Dehlin filed a frivolous appeal. RAP 18.9 authorizes an appellate court to order a party who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed." For an appeal to be frivolous under RAP 18.9, it must not present any debatable issues on which reasonable minds may differ and must be totally devoid of merit. *In re Recall of Boldt*, 187 Wn.2d 542, 556, 386 P.3d 1104 (2017). This court resolves all doubts as to whether the appeal is frivolous in favor of the appellant. *Hanna v. Margitan*, 193 Wn. App. 596, 615, 373 P.3d 300 (2016).

Here, Ms. Dehlin raised issues that were at least debatable. We, therefore, decline to award attorney fees to Forget Me Not under RAP 18.9.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Pennell, J.

24